EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALBERTO CRUZ COLLAZO, acusado y apelante.

*Número:* CR-66-410        *Resuelto:* 10 de enero de 1968

*Pedro Malavet Vega* y *José Enrique Ayoroa Santaliz*, abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El apelante fue convicto de una infracción al Art. 4 de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951. Este Art. 4 dispone textualmente así:

"Toda persona que posea, porte o conduzca cualquier arma de las comúnmente conocidas como 'black jacks', cachiporras o manoplas; toda persona que porte o conduzca cualquier arma de las conocidas como cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón o cualquier instrumento similar, y excepto cuando se portaren o condujeren en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación u oficio, e incluyendo además las hojas de navajas de afeitar de seguridad y garrotes cuando éstos se sacaren, mostraren o usaren en la comisión de un delito público o en la tentativa de cometerlo; y toda persona que usare contra otra cualquiera de las armas nombradas anteriormente en este artículo será culpable de delito menos grave (*misdemeanor*), y si ha sido convicta previamente de cualquier infracción a esta Ley, o de cualquiera de los delitos especificados en el artículo 17 de la misma, será culpable de delito grave (*felony*)".

El anterior artículo establece tres modalidades distintas de infringirlo:

(1) Poseer, portar o conducir un arma de las comúnmente conocidas como "black jacks", cachiporras o manoplas.

(2) Portar o conducir un arma de las conocidas como *cuchillo,* puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón o cualquier instrumento similar, excepto cuando los mencionados artefactos se portaren o condujeren en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación u oficio. Esta portación o conducción incluye la de las navajas de afeitar de seguridad y de los garrotes cuando estos se sacaren, mostraren o usaren en la comisión de un delito público o en la tentativa de cometerlo.

(3) El uso contra otra persona de cualquiera de las armas mencionadas anteriormente en este Art. 4.

La acusación contra el apelante le imputa que:

" . . . ilegal, voluntaria y maliciosamente, portaba, conducía y transportaba un cuchillo, siendo dicho cuchillo una arma mortífera con la cual puede causarse grave daño corporal, cuyo cuchillo portaba, conducía y transportaba el acusado en este caso, en ocasión de usarlo no como instrumento propio de un arte, deporte, profesión, ocupación u oficio, *y el cual lo usó en la comisión* de un delito de atentado a la vida *(felony)*".

De las tres modalidades anteriormente expuestas en que puede infringirse el Art. 4 de la Ley de Armas, al apelante se le imputó dos de ellas en la acusación:

(i) La portación, conducción y transportación de un *cuchillo* en ocasión en que no se usaba como instrumento propio de un arte, deporte, profesión, ocupación u oficio; y

(ii) El uso de ese cuchillo contra otra persona en la comisión de un delito de atentado a la vida.

En lo que respecta a esta acusación, la evidencia del Pueblo demostró que los hechos ocurrieron dentro del establecimiento comercial del apelante. Un grupo de personas jugaba a las cartas. El apelante no jugaba. Hubo un incidente entre éste y el perjudicado que motivó la terminación del juego. Declaró el perjudicado Nicolás Ramos Ayala: (R. págs. 16–18)

" . . . Nos paramos y yo recogí las cartas y se las entregue [al apelante], y cuando se las entregué me dijo: "tú eres un charlatan', y me tiró una bofetada, pero no me dio; y los otros mucha-

chos me sacaron a mi hacia afuera, y él se metió dentro de la barra; pero como él y yo éramos buenos amigos antes de eso, yo les dije a los muchachos: 'Yo quiero ir donde Berto y darle una satisfacción o pedirle perdón si le había ofendido'; entonces, cuando yo fui frente a la barra, que le dije por qué había hecho conmigo, se puso furioso, y cogió un cuchillo de partir salchichón, y no pasaron dos palabras . . . .

P. ¿Hizo algo con el cuchillo este muchacho?

R. Sí, hizo.

P. ¿Qué hizo?

R. Como no. Me lo espetó aquí."

Más adelante declaró el perjudicado que era un cuchillo de esos que se usan en las tiendas, de partir salchichón, de seis o siete pulgadas de largo.

El único otro testigo del Pueblo que declaró, después de relatar el incidente relacionado con el juego de barajas dijo en lo pertinente al cuchillo: (R. pág. 77)

"P. ¿Y que hizo el Sr. Nicolás Ramos?

R. El entró a la barra y le dijo: 'Dame un cigarrillo, Berto', y él se lo prendió, y cuando se lo prendió Berto Cruz le dio una bofetada a Nicolás Ramos. Y entonces Nicolás Ramos dijo: 'Berto, ¿que has hecho?', y se echó a un lado y cogió dos botellas; y entonces se echó hacia acá y bombeó las dos botellas, las cuales no le dieron a él, y fueron a chocar allá; y entonces cuando el Sr. Nicolás Ramos bombeó las botellas, que el Señor Alberto Cruz esquivó, entonces vino y lo cortó aquí, y volvió y lo cortó aquí, y ahí yo salí a buscar los guardias.

P. ¿Usted vio el cuchillo ese?

R. El cuchillo yo lo vi. Como de seis y media a siete pulgadas de largo . . . .

. . . . . . . .

R. Bueno, cuando él le dio la bofetada, él *se armó* del cuchillo, porque el cuchillo estaba al lado de él; y Nicolás dio la vuelta y cogió las dos botellas."

Con la anterior evidencia en el récord, es incuestionable que no se probó al apelante una violación de la segunda modalidad del Art. 4 anteriormente expuesta, o sea, la *porta-*

*ción o conducción de un cuchillo.* La evidencia sí demostró una infracción de la tercera modalidad, el *uso* de un cuchillo por el apelante contra otra persona.

El apelante invoca en su alegato el beneficio de nuestra jurisprudencia sobre la portación incidental de un arma que, en esas circunstancias, ha exonerado de una imputación de portarla o conducirla. Cf. *El Pueblo* v. *Moll,* 28 D.P.R. 783 (1920); *Pueblo* v. *Correa,* 36 D.P.R. 440 (1927); *El Pueblo* v. *Borges,* 23 D.P.R. 524 (1916); *Pueblo* v. *Arana,* 72 D.P.R. 821 (1951); *Pueblo* v. *Suazo,* 65 D.P.R. 28 (1945).

No obstante, bajo el presente Art. 4 él no quedaría totalmente exonerado en este caso a base de dicha doctrina, ya que hubo prueba de la tercera modalidad; prueba de que el apelante *usó* el cuchillo contra otra persona.

Surgen, sin embargo, otras consideraciones en torno al problema envuelto. Conjuntamente con la acusación por infracción del Art. 4 de la Ley de Armas se radicó acusación contra el apelante imputándole que:

" . . . de una manera ilegal, voluntaria, maliciosa y criminalmente, con deliberación, y con el propósito firme y decidido de matar a un ser humano, acometió y agredió a dicho ser humano, de nombre Nicolás Ramos Ayala *con un cuchillo,* un instrumento que es cortante, . . . y al acometer y agredir a esta persona lo hizo con intención de cometer asesinato . . . ."

El proceso por la anterior acusación de agresión con intención de cometer asesinato—Art. 218 Código Penal—fue visto ante jurado. Se estipuló que quedarían sometidas con la misma prueba esta acusación y la de infracción del Art. 4 de la Ley de Armas. El jurado absolvió al apelante del delito de agresión para cometer asesinato.

■ Ante las circunstancias particulares que presenta este caso, en donde no se probó la portación o conducción del cuchillo (2da. modalidad) como acto prohibido separado de su *uso,* el delito menor por el *uso* del cuchillo en la agresión de la víctima castigado en el Art. 4 de la Ley de Armas

constituyó el mismo acto delictivo que la agresión de la víctima en el caso grave de ataque para cometer asesinato, y quedó comprendido en el veredicto absolutorio del jurado.

Si bien el Art. 4 de la Ley de Armas tiene que ver con la posesión, portación y conducción de los instrumentos que enumera, lo que se castiga en la 3ra. modalidad señalada es un acometimiento o un acometimiento y agresión contra otra persona utilizando cualesquiera de tales instrumentos enumerados en el artículo. [1]

■ Bajo la norma típica de derecho que forma parte también de nuestra doctrina, en el proceso por la acusación de agresión para cometer asesinato el jurado podía traer en este caso, en lugar de un veredicto totalmente absolutorio o condenatorio de ese delito, un veredicto de agresión para cometer homicidio o de acometimiento y agresión grave, estando estos delitos de menor gravedad abarcados o comprendidos dentro del mayor imputado. Por ser ese el derecho aplicable, la Sala correctamente dio instrucciones en este caso sobre los mismos. [2] *Pueblo* v. *Pérez*, 65 D.P.R. 693 (1946) ; *Pueblo* v. *Fernández*, 76 D.P.R. 604, 608 (1954) y casos citados; *Pueblo* v. *Llauger*, 14 D.P.R. 548 (1908) ; *Pueblo* v.

---

[1] El récord demuestra que absuelto el apelante por el jurado del delito. de agresión para cometer asesinato, rebajado a homicidio, y convicto de la infracción al Art. 4 de la Ley de Armas la Sala, al sentenciar por este delito menos grave a un año de cárcel, concedió al apelante los beneficios de una sentencia suspendida. Ley Núm. 259 de 3 de abril de 1946 según ha sido enmendada.

La sentencia se dictó el 29 de octubre de 1965. El expediente en apelación se radicó el 20 de septiembre de 1966 próximo ya a expirar el cumplimiento de la misma en probatoria. El recurso quedó perfeccionado el 18 de abril de 1967, ya cumplida. En vista, no obstante, de las consecuencias posteriores que puede tener la convicción, particularmente a la luz del propio Art. 4 de la Ley de Armas, estamos resolviendo en los méritos.

[2] Después de desfilar toda la prueba el fiscal solicitó la rebaja del delito a una acusación de agresión para cometer homicidio—Art. 223 Código Penal—imputando entonces que en ocasión de una súbita pendencia o arrebato de cólera, y con intención de darle muerte, el apelante *agredió* a Nicolás Ramos Ayala *con un cuchillo*.

*Lange*, 24 D.P.R. 226 (1916); *Pueblo* v. *Dumas*, 14 D.P.R. 397, 404 (1908); *Pueblo* v. *Gómez*, 14 D.P.R. 127 (1908); cf. *Pueblo* v. *Fuentes*, 63 D.P.R. 44, 45 (1944); *Pueblo* v. *Vega*, 20 D.P.R. 298, 303 (1914); *Pueblo* v. *Sánchez*, 57 D.P.R. 718 (1940); *Pueblo* v. *Gómez*, 71 D.P.R. 816, 818 (1950).

Usar un cuchillo contra otra persona, en la expresión del Art. 4, no es otra cosa sino acometer o acometer y agredir a una persona con un cuchillo. El acometimiento y agresión, según la Sec. 1 de la Ley de 10 de marzo de 1904—33 L.P.R.A. sec. 821—es el acto ilegal de inferir algún daño violento *en la persona* de un semejante con intención de causarle daño, cualesquiera que sean *los medios* y el grado de violencia que se emplearen. Es grave, Sec. 6—33 L.P.R.A. sec. 826—entre otras situaciones, cuando se infiere una herida grave a la persona agredida, cuando se cometiere con armas mortíferas en circunstancias que no demostraren la intención de matar o mutilar; cuando se agrediere con el fin calculado de inferir graves heridas corporales.

El hecho de que se trate del acometimiento y agresión personal que contempla el Art. 4 mediante el *uso* aquí de un cuchillo, no hace inaplicable nuestra doctrina anteriormente ilustrada. En este caso, no habiéndose probado la portación o conducción del cuchillo bajo el Art. 4, pero sí el uso del mismo en la agresión a la persona del perjudicado, el hecho delictivo de ese uso y que constituyó la base para la acusación y el proceso por agresión para cometer asesinato, luego homicidio, quedó juzgado por el veredicto absolutorio, como igualmente hubiera quedado juzgado por un veredicto condenatorio, del delito mayor.

No se trata de la situación en que, según nuestra doctrina, absuelto por el jurado de la muerte criminal, o de la agresión criminal para dar muerte, cualesquiera que fueran las razones de la absolución, el tribunal de derecho puede, no obstante, declarar convicto a un acusado de la portación

del arma que se alega usó, bajo la apreciación distinta de la prueba por parte del magistrado. Aquí el récord no probó la portación o conducción.

Nada hay en la Ley de Armas, en su Art. 4, que indique que el Legislador deseó castigar por duplicado el acometimiento o acometimiento y agresión que contiene la 3ra. modalidad de dicho artículo por el uso del arma contra otra persona, y el acometimiento o acometimiento y agresión penado en la Ley de 1904, siendo el mismo acto de agresión. Por analogía, confróntense: *Prince* v. *United States*, 352 U.S. 322; *Heflin* v. *United States*, 358 U.S. 415; *Ingram* v. *United States* (D.C. Cir.), 353 F.2d 872.

En el caso de *Prince*, se procesó al acusado por dos infracciones a la Ley Federal de Robo a los Bancos. La primera bajo la disposición de dicha Ley referente a la apropiación de otra persona . . . por medio de violencia, intimidación, etc. de propiedad, dinero o cosa de valor . . . perteneciente a o en la custodia, . . . de un banco. . . . La segunda bajo otra disposición que castiga el entrar a un banco, . . . con intención de cometer allí un delito grave que afectare dicho banco . . . o cualquier hurto.

El Tribunal Supremo declaró ilegal la convicción por esta segunda imputación, habiendo sido convicto el acusado de la primera. Expresó que el gravamen del delito de *entrada* ilegal era la intención de cometer un delito grave, y que cuando el robo quedó consumado, esta intención quedó fundida en el robo y hubo un solo delito realizado.

En *Heflin*, ocurrió otra situación similar. Se declaró convicto al acusado de violar el mismo estatuto de Bancos, por (i) el asalto y la apropiación de propiedad por medio de la violencia, etc.; (ii) por recibir la propiedad así hurtada, y (iii) por conspirar para violar el estatuto. El Tribunal determinó que la sentencia por *recibir* la propiedad como secuela de habérsela apropiado mediante violencia era impro-

cedente. El acto de hurtar y recibir la propiedad en ese caso se confundieron.

Guarda aún más relación con el presente, el caso de *Ingram,* antes citado. La Corte de Apelaciones del Distrito de Columbia sostuvo la improcedencia de dos sentencias consecutivas por agresión con intención de matar, como en este caso, y agresión con un arma peligrosa, bajo el principio de que ambas cosas constituían un solo acto delictivo.

Expresamos al comienzo que al apelante se le imputó en la acusación bajo el Art. 4 de la Ley de Armas (i) el portar y conducir el cuchillo y (ii) el uso del cuchillo en la comisión de un delito de atentado a la vida.

La prueba dejó de sostener la primera imputación. La segunda quedó embebida y resuelta en el fallo del jurado.

*Se revocará la sentencia apelada.*

El Juez Asociado Señor Blanco Lugo disintió.

